Judge BAKER
delivered the opinion of the Court.
In accordance with his pleas, Appellant was convicted by a military judge of unauthorized absence and missing movement in violation of Articles 86 and 87, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886 and 887 (2000), respectively. The adjudged and approved sentence included confinement for 90 days, forfeiture of $650 pay per month for three months, and a bad-conduct discharge. After Appellant’s case was docketed with the Navy-Marine Corps Court of Criminal Appeals, but before submission of any assignments of error, appellate defense counsel moved the court for relief from post-trial processing errors. Specifically, counsel asserted that the convening authority took action before the staff judge advocate’s recommendation (SJAR) was properly served on trial defense counsel pur *262 suant to Rule for Courts-Martial 1106(f) [hereinafter R.C.M.]. This motion was denied and the case was submitted for review without specific assignments of error. Shortly afterwards, the Court of Criminal Appeals affirmed the findings and sentence in a short-form opinion. United States v. Lowe, NMCM No. 200000956 (N.M.Ct.Crim.App. August 30, 2001). Thereafter, Appellant filed a motion for reconsideration of the lower court’s decision.
In conjunction with this motion, Appellant moved to attach certain documentation regarding a gunshot wound he received after his court-martial while awaiting discharge in the Transient Personnel Unit. Appellant’s motion to supplement the record with additional documentation was granted, but the motion for reconsideration was ultimately denied. We granted review of the issue regarding the failure to serve the defense counsel with the SJAR.
Included with this documentation supporting the motion for reconsideration is a naval message with a date-time group of 211330Z Jan 00 entitled, “Violent Crime Report — Assault With a Deadly Weapon.” This report states, “Approx. 0200L, 21Jan00 victim was outside the Golden Grill Mongolian Barbecue (a local night club) ... and an argument occurred. The suspect pulled a gun and shot the victim in the right arm.”[1] An entry in Appellant’s medical record states that he “will need very aggressive therapy to restore his motion.... His long-term prognosis is uncertain based on his healing and motion.” A letter from Appellant’s mother to the Navy-Marine Corps Appellate Review Activity expressed concerns about her ability to provide for her son’s medical care following discharge, and she requested additional information on “the differences [between] a Bad-Conduct Discharge and a Dishonorable Discharge, including benefits and rights.”
DISCUSSION
Before this Court, Appellant renews his request for a new post-trial review because his trial defense counsel was not served with the SJAR prior to the convening authority’s action pursuant to R.C.M. 1106(f). As a result, Appellant argues, “the convening authority should have been apprised of the significant effect a bad-conduct discharge would have on Appellant’s ability to receive medical care for an injury that occurred while he was on active duty.”
The Government argues that Appellant, in effect, waived any objection to the Government’s failure to comply with R.C.M. 1106(f)- First, according to the Government, Appellant failed to submit information concerning his physical condition for the convening authority’s consideration despite four and a half months to do so. Second, citing R.C.M. 1107(f)(2), the Government argues that Appellant could have submitted pertinent materials after the convening authority acted and then requested that the convening authority recall and modify his action. The Government further asserts that the record is devoid of any evidence suggesting Appellant would have submitted material concerning his physical condition to the convening authority. Thus, Appellant has not shown any prejudice.
The Government’s first argument is without merit. Rule for Courts-Martial 1106(f)(1) states:
Service of recommendation on defense counsel and accused. Before forwarding the recommendation and the record of trial to the convening authority for action under R.C.M. 1107, the staff judge advocate or legal officer shall cause a copy of the recommendation to be served on counsel for the accused.
The text is plain. The SJAR is required to be served on trial defense counsel before the convening authority takes action. This affords the accused an opportunity to communicate with the convening authority on the question of clemency and other post-trial matters at the same time the Government is heard. ' In this manner, the convening authority has the benefit of information received through the adversarial process before *263 he or she acts. Moreover, Article 60, UCMJ, 10 U.S.C. § 860 (2000), provides the accused the right to submit matters for the convening authority’s consideration “within 10 days after the accused has been given an authenticated record of trial and, if applicable, the recommendation of the staff judge advocate[.]”[2] Thus, the fact that Appellant may have had time prior to service of the recommendation is of little moment as long as the statute provided him a period of time, as a matter of right, to submit matters related to clemency after the recommendation was served upon him.
In Appellant’s case, the parties agree that the convening authority took action on Appellant’s case before the SJAR was served on trial defense counsel. The SJAR is dated April 19. The convening authority’s action is dated May 16. The convening authority’s action indicates that a copy of the SJAR was served on trial defense counsel on April 28; however, trial defense counsel’s signed acknowledgment of receipt of the SJAR is dated June 6, three weeks after the convening authority’s action.
In United States v. Williams, 57 M.J. 1 (C.A.A.F.2002), we again recognized that while a convening authority has broad discretion whether or not to grant clemency, R.C.M. 1106(f) gives the accused a right to be served with the SJAR in a timely manner. In the wake of Williams, the Government has not persuaded us that so long as an accused could have been heard before or after the convening authority acted, he waives objection to a violation of R.C.M. 1106(f) for having failed to do so. The opportunity to be heard before or after the convening authority considers his action on the case is simply not qualitatively the same as being heard at the time a convening authority takes action, anymore than the right to seek reconsideration of an appellate opinion is qualitatively the same as being heard on the initial appeal. “The essence of post-trial practice is basic fair play — notice and an opportunity to respond.” United States v. Leal, 44 M.J. 235, 237 (C.A.A.F.1996).
The Government having not complied with R.C.M. 1106(f), the outcome in Appellant’s case hinges on whether Appellant has made a colorable showing of possible prejudice.
In United States v. Chatman, 46 M.J. 321 (C.A.A.F.1997), a case involving new matter contained in the SJA’s addendum without notice to defense counsel, we required an appellant to not only demonstrate a lack of prior notice, but also to “demonstrate prejudice by stating what, if anything, would have been submitted to deny, counter, or explain the new matter.” Id. at 323 (internal quotations omitted). In light of the discretionary nature of post-trial review, we further indicated that “the threshold should be low, and if an appellant makes some colorable showing of possible prejudice, we will give that appellant the benefit of the doubt and we will not speculate on what the convening authority might have done if defense counsel had been given an opportunity to comment.” Id. at 323-24 (emphasis added)(internal quotations omitted). In United States v. Howard, 47 M.J. 104, 107 (C.A.A.F.1997), we extended this standard to cases involving the failure to serve the SJAR on defense counsel.
We believe Appellant has met this burden. The Court of Criminal Appeals admitted into the appellate record documentation regarding Appellant’s gunshot wound. It is clear from these documents that Appellant would have sought the opportunity to inform the convening authority of his injury.
We reject the Government’s contention at oral argument that Appellant’s presence and subsequent injury at a bar at 1:00 a.m. alone militate a conclusion that the convening authority would not have considered clemency. By definition, assessments of prejudice during the clemency process are inherently speculative. Prejudice, in a case involving clemency, can only address possibilities in the context of an inherently discretionary act. Therefore, the question for this Court and the Court of Criminal Appeals is not whether we, individually or collectively, would have granted clemency to Appellant, but whether Appellant had a fair opportunity to be heard *264 on clemency before a convening authority, vested with discretion, acting in his case. Where an appellant makes a colorable showing that he was denied the opportunity to put before the convening authority matters that could have altered the outcome, this Court and the courts of criminal appeals will not speculate as to what the convening authority would have done. United States v. Anderson, 58 M.J. 374, 378 (C.A.A.F.2000).
Finally, the Government is, of course, correct that R.C.M. 1107(f)(2) allows the convening authority to recall and modify his action prior to forwarding the record for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (2000). However, as we reminded in Williams, this is a rule that permits the Government as well as an accused to seek modification of an action. Where there is a failure to comply with R.C.M. 1106(f), a more expeditious course would be to recall and modify the action rather than resort to three years of appellate litigation. The former would appear to be more in keeping with principles of judicial economy and military economy of force. Again, we reiterate the view espoused in United States v. Hill, 3 M.J. 295, 296 (C.M.A.1977), that the purpose of the service requirement imposed in United States v. Goode, 1 M.J. 3 (C.M.A.1975), and now embodied in R.C.M. 1106(f)(1), was “to eliminate, delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such error could easily and expeditiously be resolved prior to the convening and supervisory authorities’ actions.”
DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals and the action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to a convening authority for a new post-trial recommendation and action. Thereafter, Article 66 and Article 67, UCMJ, 10 U.S.C. § 867 (2000), respectively, will apPfy-

. There is no indication in the appellate record of an investigation into the shooting, or that Appellant was charged with any misconduct occurring in conjunction with the shooting.

. This statutory provision is implemented in Rule for Courts-Martial 1105(c)(1).